**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Senior Judge Lewis T. Babcock**

Civil Action No. 11-cv-00249-LTB

DANIEL L. DENNY,

      Applicant,

v.

SUSAN JONES, and
JOHN SUTHERS, The Attorney General of the State of Colorado,

      Respondents.

_____

**ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS**
_____

**Babcock, J.**

      This matter is before me on the *pro se* Application for a Writ of Habeas

Corpus Pursuant to 28 U.S.C. § 2254 ("Application") [# 1] filed on January 31, 2011, by

Applicant Daniel L. Denny.  Respondents have filed an Answer to Habeas Petition

("Answer") [# 14], and Applicant has filed a Response to Respondents' Answer to

Habeas Petition ("Reply") [# 15].

      After reviewing the pertinent portions of the record in this case including the

Application, the Answer, the Reply, and the state court record [#'s 18, 19, and 23], I

conclude that the Application should be denied.

I.  Background

      Originally, Applicant was charged in six separate cases with numerous crimes,

including burglary, criminal mischief, menacing, stalking, assault, possession of a forged

instrument, and violation of a protection order.  Applicant pled guilty to two counts of

second degree burglary charges in Adams County District Court Case Nos. 06CR3887

and 07CR257.  The remaining four cases were dismissed.  Before sentencing, Mr.

Denny filed a Colo. R. Crim. P. 32(d) motion to withdraw his guilty pleas.  The trial court

denied the motion and sentenced him to twenty years of incarceration in the DOC.  Mr.

Denny appealed, but the Colorado Court of Appeals (CCA) affirmed the trial court's

denial.  *See State of Colo. v. Denny*, No. 08CA2387 (Colo. App. Oct. 22, 2009).  Mr.

Denny filed a petition for certiorari review that was denied on February 8, 2010.  Pre-

Answer Resp. at Exs. G and H.

Mr. Denny then, on January 31, 2011, submitted an Application for a Writ of

Habeas Corpus Pursuant to 28 U.S.C. § 2254 to this Court.  Mr. Denny asserted three

claims in the Application, including that: (1) the trial court erred in denying his Rule 32(d)

motion because his plea attorney coerced him into pleading guilty and the prosecution

failed to argue prejudice based on withdrawal of the plea; (2) the plea attorney told the

court that he waived the factual basis of the plea when he had not, the prosecution did

not stipulate to the lack of a factual basis in the plea, and appellate counsel failed to

submit a transcript of the providency hearing to the appeals court; and (3) the trial court

abused its discretion in denying the Rule 32(d) motion because he had shown a fair and

just reason for withdrawal of his plea, and he had a constitutional right to go to trial.

On April 29, 2011, I entered an order dismissing Claim Two as unexhausted in

part and as procedurally barred in part and directed Respondents to file an Answer in

compliance with Rule 5 of the Rules Governing Section 2254 Cases that fully addresses

the merits of Claims One and Three.  Respondents filed an Answer on May 25, 2011,

and Applicant filed a Reply on June 9, 2011.

II.  Analysis

A.  Standard of Review

I must construe the Application liberally because Applicant is not represented by

an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d

1106, 1110 (10th Cir. 1991).  However, I cannot act as an advocate for a *pro se* litigant.

*See Hall*, 935 F.2d at 1110.  Title 28 U.S.C. § 2254(d) provides that a writ of habeas

corpus may not be issued with respect to any claim that was adjudicated on the merits

in state court, unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).

I review claims of legal error and mixed questions of law and fact pursuant to 28

U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The

threshold question pursuant to § 2254(d)(1) is whether Applicant seeks to apply a rule

of law that was clearly established by the Supreme Court at the time his conviction

became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established

federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's

decisions as of the time of the relevant state-court decision."  *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where
> the facts are at least closely-related or similar to the case *sub judice*.
> Although the legal rule at issue need not have had its genesis in the
> closely-related or similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

3

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry

pursuant to § 2254(d)(1).  *See id.* at 1018.  If a clearly established rule of federal law is

implicated, I must determine whether the state court's decision was contrary to or an

unreasonable application of that clearly established rule of federal law.  *See Williams*,

529 U.S. at 404-05.

> A state-court decision is contrary to clearly established
> federal law if: (a) "the state court applies a rule that
> contradicts the governing law set forth in Supreme Court
> cases"; or (b) "the state court confronts a set of facts that are
> materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from [that]
> precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th
> Cir. 2006) ] (internal quotation marks and brackets omitted)
> (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is
> commonly understood to mean 'diametrically different,'
> 'opposite in character or nature,' or 'mutually opposed.' "
> *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application
> of clearly established federal law when it identifies the
> correct governing legal rule from Supreme Court cases, but
> unreasonably applies it to the facts.  *Id.* at 407-08.
> Additionally, we have recognized that an unreasonable
> application may occur if the state court either unreasonably
> extends, or unreasonably refuses to extend, a legal principle
> from Supreme Court precedent to a new context where it
> should apply.

*House,* 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective one.

*See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ

simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly.

Rather that application must also be unreasonable." *Id.* at 411.  "[A] decision is

'objectively unreasonable' when most reasonable jurists exercising their independent

judgment would conclude the state court misapplied Supreme Court law." *Maynard*,

468 F.3d at 671.

In addition,

> evaluating whether a rule application was unreasonable
> requires considering the rule's specificity.  The more general
> the rule, the more leeway courts have in reaching outcomes
> in case-by-case determinations.  It is not an unreasonable
> application of clearly established Federal law for a state
> court to decline to apply a specific legal rule that has not
> been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 131 S. Ct. 770, 786,  --- U.S. --- (Jan. 19, 2011) (internal quotation

marks and citation omitted).  I "must determine what arguments or theories supported or

. . . could have supported[ ] the state court's decision" and then "ask whether it is

possible fairminded jurists could disagree that those arguments or theories are

inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.*  "[E]ven a

strong case for relief does not mean the state court's contrary conclusion was

unreasonable." *Id.* (citation omitted).  "Section 2254(d) reflects the view that habeas

corpus is a guard against extreme malfunctions in the state criminal justice systems, not

a substitute for ordinary error correction through appeal." *Id.* (Internal quotations marks

and citation omitted).

Under this standard, "only the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671.

Furthermore,

> [a]s a condition for obtaining habeas corpus relief from a
> federal court, a state prisoner must show that the state
> court's ruling on the claim being presented in federal court
> was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Richter*, 131 S. Ct. at 786-87.

I review claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See*

*Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2)

allows a court to grant a writ of habeas corpus only if the state court decision was based

on an unreasonable determination of the facts in light of the evidence presented.

Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations

are correct, *see Sumner v. Mata*, 455 U.S. 591, 592-93 (1982), and Applicant bears the

burden of rebutting the presumption by clear and convincing evidence, *see Houchin v.*

*Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997). "The standard is demanding but not

insatiable . . . [because] '[d]eference does not by definition preclude relief.' " *Miller-El v.*

*Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340

(2003)).

A claim, however, may be adjudicated on the merits in state court even in the

absence of a statement of reasons by the state court for rejecting the claim. *Richter*,

131 S. Ct. at 784. ("[D]etermining whether a state court's decision resulted from an

unreasonable legal or factual conclusion does not require that there be an opinion from

the state court explaining the state court's reasoning"). Furthermore, "[w]hen a federal

claim has been presented to a state court and the state court has denied relief, it may

be presumed that the state court adjudicated the claim on the merits in the absence of

any indication or state-law procedural principles to the contrary." *Id.* at 784-85.  Even

"[w]here a state court's decision is unaccompanied by an explanation, the habeas

applicant's burden still must be met by showing there was no reasonable basis for the

state court to deny relief." *Id.* at 784.

In other words, I "owe deference to the state court's result, even if its reasoning is

not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore,

I "must uphold the state court's summary decision unless [the court's] independent

review of the record and pertinent federal law persuades [me] that [the] result

contravenes or unreasonably applies clearly established federal law, or is based on an

unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178.

"[T]his 'independent review' should be distinguished from a full de novo review of the

[applicant's] claims." *Id.*  Likewise, I apply the AEDPA deferential standard of review

when a state court adjudicates a federal issue relying solely on a state standard that is

at least as favorable to the applicant as the federal standard.  *See Harris v. Poppell*, 411

F.3d 1189, 1196 (10th Cir. 2005).  If a claim was not adjudicated on the merits in state

court, and if the claim also is not procedurally barred, I must review the claim *de novo*

and the deferential standards of § 2254(d) do not apply.  *See Gipson v. Jordan*, 376

F.3d 1193, 1196 (10th Cir. 2004).

B.  Merits of Claims One and Three

Applicant alleges in his first claim that he showed fair and just reason for

withdrawing his guilty pleas, but the trial court did not apply the correct legal standards

in denying his request.  He further contends that his attorney coerced him into pleading

guilty, the prosecution did not state it would be prejudiced by the withdrawal, and there

was no showing of a waste of judicial resources if he was allowed to withdraw the pleas.

In Claim Three, Applicant asserts that the trial court abused its discretion by denying his

right to go to trial and by not allowing him to speak at the hearing on his motion to

withdraw his pleas.

In addressing these claims, the CCA concluded:

> A defendant may not as a matter of right have a guilty plea withdrawn or changed. *People v. Valdez*, 928 P.2d 1387, 1392 (Colo. App. 1996). Rather, the defendant has the burden of showing a fair and just reason for the withdrawal of his plea. *People v. Gutierrez*, 622 P.2d 547, 559 (Colo. 1981); *People v. Finley*, 141 P.3d 911, 913 (Colo. App. 2006). The defendant must also establish that denial of the request to withdraw the plea will subvert justice. *Gutierrez*, 622 P.2d at 559; *People v. Jones*, 33 P.3d 1258, 1259 (Colo. App. 2001).

> A motion to withdraw a plea before sentencing is addressed to the sound discretion of the trial court, and denial of such a motion will not be overturned absent abuse of discretion. *Gutierrez*, 622 P.2d at 559. To constitute an abuse of discretion, the court's ruling must be manifestly arbitrary, unreasonable, or unfair. *Id.*; *People v. DiGuglielmo*, 33 P.3d 1248, 1250 (Colo. App. 2001).

> Here, defendant was initially charged, in six separate cases, with numerous felonies and habitual criminal counts. All of the charges stemmed from defendant's abuse of his girlfriend (the victim).

> Defendant pleaded guilty to two counts of second degree burglary with a stipulation for a sentence of ten to twenty years imprisonment. In exchange, the prosecution moved to dismiss all of the remaining charges and habitual criminal counts. The court accepted the disposition and set the matter for sentencing.

> Prior to sentencing, defendant filed pro se pleadings seeking to withdraw his guilty pleas based on the allegedly ineffective assistance of his counsel. Specifically, defendant alleged his counsel had not prepared sufficiently for trial, had lied to him, and had coerced him to plead guilty.

> On the date of the scheduled sentencing hearing, defendant elaborated on his complaints about counsel's performance. The court rescheduled the matter and appointed alternate defense counsel.

8

At the rescheduled hearing, alternate defense counsel informed the court that he had investigated defendant's complaints and concluded that he could not set forth good cause for defendant to withdraw his plea. Based on this representation, the court granted defendant's motion to discharge alternate defense counsel.  Proceeding pro se, defendant alleged that plea counsel (1) had not adequately communicated with him; (2) had failed to interview witnesses (while falsely representing that he had); and (3) had coerced him to plead guilty by describing his desire for a trial as "suicidal."

Plea counsel -- a deputy public defender with fifteen years experience -- testified that he had not lied to defendant.  Although counsel admitted he had been a "strong advocate for the deal," he denied having coerced defendant to plea guilty.  With respect to defendant's allegations of inadequate trial preparation, counsel informed the court that he had conducted a thorough investigation of the charges and issued subpoenas to many of the witnesses whom defendant had identified in support of his plea withdrawal motion, but that he had ultimately concluded these witnesses were not "going to be very helpful."  In addition, counsel explained that he had maintained regular communication with defendant and that, although defendant had been anxious about his circumstances, he had not been "confused, like having a mental state problem or anything like that."  Finally, plea counsel verified that defendant had "understood the terms of the deal."

The trial court found that plea counsel had provided defendant with "good" and "truthful" advice, that counsel's candor with defendant had not given rise to a conflict of interest, and that defendant had knowingly and voluntarily pleaded guilty with "full knowledge" of his legal rights and the potential penalties.  Based on these findings, the court denied defendant's motion to withdraw his pleas.  At a subsequent hearing (where defendant was represented by alternate defense counsel), the court sentenced defendant to twenty years imprisonment.  Defendant then filed this appeal.

As an initial matter, we note that, although the trial court based its ruling in part on a review of the providency hearing transcript, defendant has not included a copy of that transcript as part of the record on appeal. Therefore, we are obligated to presume the Crim. P. 11 plea advisement proceeding supports the trial court's findings that defendant pled guilty with full knowledge of his legal rights, and did so in a voluntary and knowing fashion, which in turn supports the ruling denying defendant's motion to withdraw his plea.  *See People v. Dixon*, 950 P.2d 686, 689 (Colo. App. 1997) (if the defendant fails to meet his or her responsibility to designate as part of the record on appeal those materials necessary to an

evaluation of the issues raised, then the appellate court shall presume the record supports the trial court's conclusions).

Beyond this presumption, the trial court's ruling is supported by the record of the Crim. P. 32(d) proceedings. It was the trial court's prerogative to find plea counsel's testimonial account of his representation more credible than defendant's allegations. *See People v. Downey*, 994 P.2d 452, 455 (Colo. App. 1999) (the weight and credibility to be given the testimony of witnesses are within the province of the trial court), *aff'd*, 25 P.3d 1200 (Colo. 2001). Further, although the court did not explicitly apply the two-prong test for ineffective assistance of counsel, *see People v. Garcia*, 815 P.2d 937, 941-42 (Colo. 1991) (to establish ineffective assistance of counsel in connection with a guilty plea, a defendant must demonstrate that, but for counsel's allege dereliction, he would not have pleaded guilty), the record supports the court's findings that counsel adequately prepared for trial, and that his frank assessment of defendant's predicament did not coerce defendant to plead guilty against his will. *See People v. Starkweather*, 159 P.3d 665, 668 (Colo. App. 2006) ("Standing alone, competent advice by counsel, albeit stated in strong language, does not constitute coercion. It is defense counsel's duty to discuss the case -- including its probable outcome -- in complete candor with a defendant.") Therefore, we conclude that the trial court did not abuse its discretion by not allowing defendant to withdraw his guilty pleas.

*State of Colo. v. Denny*, No. 08CA2387 (Colo. App. Oct. 22, 2009)

A defendant does not have an absolute right to withdraw a guilty plea, *United States v. Siedlik*, 231 F.3d 744, 748 (10th Cir. 2000) (citing *United States v. Rhodes*, 913 F.2d 839, 845 (10th Cir. 1990), and a defendant bears the burden of showing a fair and just reason for withdrawal of his plea, *id.* (citations and quotation marks omitted). There are seven factors to consider when applying the fair and just standard in a motion filed by a federal defendant to withdraw a plea under Fed. R. Crim. P. 11(d)(2)(B), including:

1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the government; (3) whether the defendant delayed in filing his motion, and if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to the defendant; (6) whether the plea

was knowing and voluntary; (7) whether the withdrawal would waste
judicial resources.

*United States v. Yazzie*, 407 F.3d 1139, 1142 (10th Cir. 2005) (citing *United States v.*

*Sandoval*, 390 F.3d 1294, 1298 (10th Cir. 2004).

"A plea bargain standing alone is without constitutional significance," and "[i]t is

only when the consensual character of the plea is called into question that the validity of

a guilty plea may be impaired."  *See Mabry v. Johnson*, 467 U.S. 504, 507-09 (1984),

*abrogated in part on other grounds*, *Puckett v. United States*, 556 U.S. 129, 129 S.Ct.

1423, 1430 n. 1 (2009).  Like Fed. R. Crim. P. 11(d)(2)(B) , Colo. R. Crim. P. 32(d) is

subject to a fair and just standard of review.  *See People v. Chippewa*, 751 P.2d 607

(1988) (citations omitted).  Only two of the seven factors identified above, including

whether close assistance of counsel was available and the plea was knowing and

voluntary, address the consensual character of Applicant's plea and are appropriate for

federal habeas review.  *See id.* at 611 n. 6 (abuse of discretion principles do not reach

the constitutional question of whether a defendant's plea was entered knowingly or

voluntarily).

To the extent Applicant claims that his motion to withdraw his plea met the fair

and just standard in part because (1) the prosecution did not state it would be

prejudiced by the withdrawal; (2) there was no showing of a waste of judicial resources

if he was allowed to withdraw the pleas; and (3) he was not allowed to speak at the

hearing, these claims do not assert a violation of the U.S. Constitution or federal law.  At

best the claims may challenge state law.  Therefore, I will address only the consensual

claim that Applicant raises, which is whether Applicant's plea was made knowingly and voluntarily.

Because a criminal defendant waives numerous constitutional rights when he pleads guilty a plea must be entered into knowingly and voluntarily in order to be constitutionally valid. *Boykin v. Alabama,* 395 U.S. 238, 244 (1969). "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31 (1970)). In applying this standard, I must look at the totality of circumstances surrounding the plea. *Id.* A criminal defendant's solemn declaration of guilt carries a presumption of truthfulness. *Henderson v. Morgan,* 426 U.S. 637, 648 (1976). A criminal defendant cannot successfully challenge the voluntariness of his plea merely on the basis that he was motivated to plead guilty. *Brady v. United States,* 397 U.S. 742, 750 (1970).

Although Applicant does not specifically state he is raising an ineffective assistance of counsel claim, he does assert that his attorney coerced him into pleading guilty and lied to him, which in substance is an ineffective assistance of counsel claim. When a habeas applicant challenges a guilty plea based upon ineffective assistance of counsel, the deficient performance prong of the *Strickland* test requires proof of a lack of reasonably competent advice concerning the plea. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). An applicant must satisfy the prejudice inquiry by showing that the constitutionally ineffective performance "affected the outcome of the plea process. In other words . . . that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

Conclusory allegations without supporting factual averments are insufficient to support a claim of ineffective assistance of counsel. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

The Tenth Circuit has noted that the "colloquy between a judge and a defendant before accepting a guilty plea is not *pro forma* and without legal significance. Rather, it is an important safeguard that protects defendants from incompetent counsel or misunderstandings." *Fields v. Gibson*, 277 F.3d 1203, 1214 (10th Cir. 2002). Further, "[n]umerous courts have denied relief under §§ 2254 and 2255 to petitioners alleging that their guilty pleas were the product of ineffective assistance, where the plea colloquies have demonstrated otherwise." *Hammons v. Paskiewicz*, 368 F. App'x. 904, 907 (10th Cir. 2010) (citing *Fields*, 277 F.3d at 1214).

At the plea hearing, the colloquy between Applicant and the court was as follows:

MR. EVANS: There is, Your Honor. If I may set that out on the record. In this case, Mr. Denny would be willing to plead guilty to Count I, that's the Second Degree Burglary, Class 3 Felony, in 06CR3887, he would plead guilty to Count I, that's the Second Degree Burglary, Class 3 Felony in 07CR257.

THE COURT: Hold on a second. Okay.

MR. EVANS: There is an agreement that we asked if the Court would be bound, before, off the record, that the sentence in this case, however, they would run consecutive, concurrent, however the Court chose to do, that would in total be no less than 10 years in DOC, no more than 20 years in DOC, somewhere in that range with those pleas. Mr. Mortizky would dismiss the habitual criminal counts and all of the other counts, in-- in the other cases. If there are restitution issues, all involves the same named victim Shelly Chitwood, and if -- if there are any restitution claims we can fold all of those into the same --

THE COURT: Is this your understanding, Mr. Mortizky?

MR. MORTIZKY: Yes, Judge, it is.

THE COURT: Is this your understanding, Mr. Denny?

THE DEFENDANT: Yes, sir, it is.

THE COURT: You understand, sir, if you enter these pleas of guilty, the charge of Second Degree Burglary is a Class 3 Felony.  As a Class 3 Felony it carries a fine that could range anywhere between 3,000 and 750,000 dollars, or by a term of incarceration at the Colorado State Department of Corrections for a presumed period of time of no less than 4 years, nor more an [sic] 12 years, that's the presumptive range of sentencing for a Class 3 Felony.  Class 3 Felonies actually can go as low as 2 years if the Court found extraordinarily mitigating circumstances, or can go as high as 24 years if the Court found extraordinarily aggravating circumstances, based on your prior criminal history.

Which my understanding is that there are prior felony convictions, and the Court can consider that, and aggravate the sentence accordingly.  In addition, Class 3 Felonies, carry a five-year period of parole.

Furthermore, you must understand that whatever sentence in this matter can be imposed concurrently or consecutively to one another.  Now, the sentence agreement that I have agreed to abide by is that if you enter these pleas of guilty, the sentence in this matter will be anywhere between 10 years and 20 years, with a five-year period of parole.  It will not be below 10 years, there will be a sentence, but it will not exceed 20 years with a 5 year period of parole.  Do you understand?

THE DEFENDANT: Yes, sir, I do.

THE COURT: And you understand, sir, that the decision of whether it's 10 years or 20 years or where in between is going to be the Court's decision at the time of sentencing.  Do you understand?

THE DEFENDANT: Yes, sir, I do.

THE COURT: Do you also understand, sir, that if you proceed in this fashion, you are at the same time giving up various rights and those rights include, the right to proceed to a trial in each of these cases, we're currently scheduled for six separate trials.  You have a right to proceed to those trials, whether they are six separate trials or whether they would be combined into one trial.  Those would be trials to a jury of 12 people, at those trials, you would have had a right to be represented by an attorney of your own choosing or by court-appointed counsel at no cost to yourself as you have in Mr. Evans, today.  Do you understand?

THE DEFENDANT: Yes, sir, I do.

THE COURT: Do you understand, sir, that right now, before you've entered any plea, and before I've accepted any plea from you, that the law presumes that you are innocent of all charges, and if you had gone to a trial, in any or all of these matters, that presumption of innocence, would have gone to trial with you, and it would have stayed with you and remained with you throughout those trials, unless the People could prove that you were guilty and to prove your guilt, they would have had to have proven your guilt, beyond a reasonable doubt, as to each material element of the original charges.  Do you understand this?

THE DEFENDANT: Yes, sir, I do.

THE COURT: In that regard, the People would have to call witnesses to testify against you, and you then would have had a right of confrontation and cross-examination of those witnesses.  You also would have had a right to bring your own witnesses to Court, and would have had a right to require those people to be here, through the Court's subpoena powers. Do you understand?

THE DEFENDANT: Yes, sir, I do.

THE COURT: When we talk about a trial, we're talking about a speedy trial within six months of your arraignment date, and a public trial.  Do you understand this?

THE DEFENDANT: Yes.

THE COURT: Do you understand, sir, if you had gone to trial, you would have had a right to present whatever defense, you thought was appropriate to your case, and that could have included any number of different things.  It could include a mental-status defense, where somebody says they are not guilty by reason of insanity for example it could include affirmative defense; such as, duress or mistake or choice of evils, or whatever may have applied.  It could include an alibi defense; alibi defense is where somebody says that they were someplace else when a crime was committed, and therefore couldn't have been the person who committed that crime.  Or it could simply be a defense of denial, which still places the burden on the People to prove your guilt beyond a reasonable doubt.  Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: You understand, sir, that if you had gone to a trial, you would have had a right to present yourself as a witness to the Defense, and to testify on your own behalf if that's what you chose to do or you had a right to go to trial and not testify, if that's what you chose to do; that decision of whether you would have testified in your own behalf in any or all of these trials would have been your decision to make, and if you decided that you wanted a trial in any or all of these cases but did not want to testify, not only is that your right to make that kind of a choice, but also I would have told the jury that was your right and I would have instructed them that they could not hold that against you for any reason. And again, the reason for that is because it's not up to you or any other person accused of a crime to try to prove that they are innocent; rather, it's always up to the government to try to prove that you are guilty, and they have to do that beyond a reasonable doubt before you could be found guilty of anything.  Do you understand this?

THE DEFENDANT: Yes, sir, I do.

THE COURT: Finally, let's say you had gone to a trial, and let's say at trial you were found guilty of anything, you then would have had the right to appeal the correctness of that decision to a higher court, and again to be represented by an attorney, and again that's either somebody that you hire out of your funds or somebody appointed for you at no cost to yourself and to be provided with free transcripts of the trial and the lower-court proceedings if you needed those things but couldn't afford them.  But if you enter a plea of guilty to these two counts of burglary, you give up that right to proceed to that trial, as well as all of the trial rights that we talked about, and at the same time, you are subjecting yourself to a potential penalty somewhere within that 10- to 20-year period, with a 5-year period of parole.  Do you understand?

THE DEFENDANT: Yes, sir, I do.

THE COURT: Let's look at these charges.  And we will look at the 06CR3887 first, just because, time-wise, that's the first one that occurred.

You understand, sir, that if you enter a plea of guilty to the charge of Second Degree Burglary, in that case, you would be admitting, that between the dates of November 16th, November 17th, here in Adams County, Colorado, that you did unlawfully, that means that you did not have the legal authority to do this, feloniously, that means that it's a felony, it's a serious matter, punishable by a possible term of incarceration in the department of corrections, and knowingly, that means that you were aware of what you were doing, aware of the circumstances surrounding your conduct, aware of the consequences of your conduct, either broke an

entrance into or entered or remained unlawfully, meaning without authority, in the dwelling belonging to Shelly Chitwood.  A dwelling, of course, is a building used for habitation, and that was located at 550 6th Street in Bennett, Colorado with the objective to commit the crime of Theft or Tampering inside that building.

Theft occurs when somebody knowingly and unlawfully using the same definitions that I have just given to you, takes a thing of value, belonging to another person, with the intent or the conscious objective of permanently depriving that person of the use and benefit of that item. Tampering occurs when somebody knowingly tampers with a property of another person, with the--with the intent to harass them or annoy them. Do you understand?

THE DEFENDANT: Yes, I do.

THE COURT: As it relates to the charge of burglary, . . . in 07CR257, you would be admitting that on the 10th of January of 2007, that you did unlawfully, feloniously and knowingly, again giving the same definitions that I have given to you just a moment ago, broke an entrance into or entered or remained without authority in the dwelling belonging to Shelly Chitwood, again located **556th [sic] Street in Bennett, Colorado, with the intent, again, with the conscious objective of committing the crime of menacing or assault or harassment.  Could be any of those.

Menacing occurs when somebody unlawfully, knowingly places another person either by--either by oral threat or physical action or any combination of the two; places that person in fear of imminent bodily Injury.  Assault occurs when somebody knowingly or recklessly, recklessly means that you consciously disregarded a substantial risk that a result would occur or that a circumstance existed, that you knowingly or recklessly caused bodily injury to another person; bodily injury would include anything as minor as pain.

Harassment by stalking . . . just a moment, occurs when somebody unlawfully, feloniously, and knowingly again using the same definitions that I have given to you, either directly or indirectly to another person makes a credible threat to an individual, this time Ms. Chitwood, in connection--and in connection with that threat, repeatedly followed or approached or contacted or placed under surveillance that individual.  So your plea would be to say, yes, I did enter that home with the intent to either commit harassment by stalking or assault or menacing.  Do you understand?

(Discussion off the record between counsel and his client.)

17

THE DEFENDANT: Yes.

THE COURT: Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And I know that you have just taken a moment to speak to your attorney about a question that you had was that resolved for you.

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Is there a stipulation to a factual basis or a waiver of the establishment of the same?

MR. EVANS: We will waive the establishment of a factual basis.

THE COURT: Thank you. Mr. Denny, has anybody threatened you or pressured you or coerced you or promised you anything to force you to enter this plea?

THE DEFENDANT: No, sir.

THE COURT: You are represented by Mr. Evans, are you satisfied with the advice and counsel and representation that he has provided to you?

THE DEFENDANT: Yes, sir.

THE COURT: And are you right now, under the influence of any intoxicants drugs or medication?

THE DEFENDANT: No, sir, not at all.

THE COURT: How old are you?

THE DEFENDANT: 32.

THE COURT: How far in school did you get?

THE DEFENDANT: High school diploma.

THE COURT: Did you finish high school?

THE DEFENDANT: Yes, sir.

THE COURT: Just generally speaking, Mr. Denny, do you have any questions at all that you would like to ask of me about what you are doing?

THE DEFENDANT: No, sir, Your Honor, I don't.

THE COURT: Okay.  In particular, do you understand what these two charges of burglary are, and that by entering these pleas of guilty, you are saying, yes, that's what occurred on those dates.  Do you understand?

THE DEFENDANT: Yes, sir, I do.

THE COURT: Okay. Was there a stipulation or a waiver of the factual basis on both of these?

MR. EVANS: We waived the establishment of factual basis on both.

THE COURT: I don't know if I mentioned that on the second one.  I have reviewed the affidavit, actually all six cases, and find they do support the original charges.

MR. MORTIZKY: And, Judge, I don't know, looking at the Defendant's criminal history, whether or not--I looked at it, I don't know whether he was on probation or parole.  I know that in the Blackstone -- Blackstone entries reflected a date in which it could have been that way.  I don't think it matters much in--in light of the stipulation, but I thought I would bring that to the Court's attention.

THE COURT: Okay.  Well, what that means is that . . . if you were on probation or parole, when these were alleged to have occurred, then the sentence range is not the presumptive range of sentencing, but rather is the midpoint of the presumptive range to twice the presumptive range, which, for a Class 3 Non-extraordinary Risk Crime, would be anywhere between 8 and 24 years, but regardless of whether you were on probation or parole or whether that applies or doesn't, we're still talking about that range between 10 and 20 years, with a 5-year period of parole.  Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: And I am binding myself to that, and you will be bound by that also.  Do you understand?

THE DEFENDANT: Yes, sir.

MR. EVANS: I think he was just trying to let you know he wasn't on bond.

19

THE COURT: Okay.  Okay.  Doesn't matter, quite frankly.  We're talking 10 to 20, right?  You understand?

THE DEFENDANT: Yes, sir.

THE COURT: Okay.  Okay.  I have asked you whether or not you understand these charges, and you understand that by entering these pleas of guilty that you are saying, yes, that's what occurred.  Do you understand what that plea of guilty says?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand what your rights are, and that by entering this plea of guilty there will never be a trial in any of these six cases, and you therefore are giving up all of those rights.  Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: Finally, you understand what the penalties could be, and that it's going to be within that 10- to 20-year range, with a 5-year period of parole, and where it fits in with that--within that range is going to be up to the Court to decide.  Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: Taking all of those things together, is this what you want to do?

THE DEFENDANT: Um, yes, sir.

THE COURT: Okay.  Then as to the charge of Second Degree Burglary in 06CR3887, this is the one that occurred in November of 2006, how would you plead, sir, guilty or not guilty?

THE DEFENDANT: I plead guilty, sir.

THE COURT: And as it relates to that same charge of Second Degree Burglary in the 07CR257, this is the one which occurred -- excuse me -- on January the 10th, 2007, how would you plead, sir, guilty or not guilty?

THE DEFENDANT: Guilty, sir.

THE COURT: Very well.  I will accept both of those pleas.  I am making the finding that they are each being made in a knowing and in a voluntary fashion.  We will set this matter down for sentencing or probation hearing.

*State of Colo. v. Denny*, No. 2006CR3887 (lead case of six cases), Trial Tr., Apr. 11,

2008 Plea Hr'g, at 3-16.

At the motion to withdraw plea hearing the trial court found as follows:

The Court's reviewed the Rule 11 advisal that was given to Mr. Denny. That Rule 11 advisal was a very thorough, full advisal. The Court finds that Mr. Denny, at the time that he entered these pleas of guilty, did so with the full knowledge of his legal rights; the rights that he was giving up; the penalties that would be imposed, including the stipulated sentence of between 10 and 20 years, which was mentioned to him on a number of different occasions; that the plea was made in a knowing and voluntary fashion by Mr. Denny; that the advice to accept that plea was made by Mr. Evans after an examination of these cases wherein he did, by the way, endorse several witnesses, maybe not the ones that Mr. Denny wanted to endorse, but the person who makes those tactical decisions is the attorney, not the client, because he is the expert.  The client isn't.

*Id.*, Trial Tr. July 15, 2008 Hr'g at 23-24.

Applicant, proceeded *pro se* at the motion to withdraw plea hearing after asking that the alternate defense counsel withdraw.  At the hearing, he stated that his counsel did not file any motions, did not respond to his letters, and did not subpoena the individuals he requested to be subpoenaed.  Trial Tr. July 15, 2008 Hr'g at 5-6. Applicant further stated that (1) he fought and argued with defense counsel; (2) counsel told him his job was to make sure he did not spend the rest of his life in prison; (3) counsel lied to him when he said he had talked with his uncle, his mother, and possible hat witnesses;  and (3) counsel told him he was being "suicidal."  *Id.* at 6.  Applicant contends that based on counsel's statements he believed he was "screwed," so he took the plea, and after doing so talked with his mother and uncle only to find counsel had

not talked with them or with any possible witnesses.  *Id.* at 7.  He then wrote a letter to

the trial court seeking to withdraw his plea.  *Id.*  Based on these arguments, Applicant

concludes that counsel coerced him into agreeing to the plea.  *Id.* at 8.

On cross-examination by Applicant at the plea withdrawal hearing, counsel (1)

agreed that he told Applicant he was acting suicidal; (2) stated that their differences of

opinion were based on whether a trial would be successful given the number of cases

against Applicant and the habitual counts; and (3) also agreed that he told Applicant it

was his job to see that Applicant did not spend his life in prison.  *Id.* at 18-20.

Counsel also during direct examination asserted that (1) he had been a defense

attorney for fifteen years; (2) he presented the prosecution's offer to Applicant and on

the day he accepted the plea discussed the terms at length with Applicant; (3) he was a

strong advocate for the plea but was not coercive; (4) an investigation was conducted

and an investigator had tried to talk with witnesses but some were not found and others

were identified through written reports; and (5) there were witnesses that were endorsed

and subpoenaed family members, but counsel did not believe these individuals would

be helpful.

Applicant had the opportunity during the colloquy with the judge at his plea

hearing to address counsel's alleged coerciveness or the disagreement he had with

counsel regarding the plea.  He did not give any indication throughout the colloquy that

he felt he was being coerced into pleading guilty or that he misunderstood or disagreed

with counsel.  On one occasion during the colloquy, after the court asked Applicant if he

understood that in agreeing to the plea he would be stating that he did enter the home

with the intent to either commit harassment by stalking or assault or menacing,

Applicant chose to discuss this question with counsel before he answered that he understood the question. Trial Tr. Apr. 11, 2008 plea hr'g at 12. The court confirmed with Applicant that he understood the question and that any concern he had about the question was resolved by the discussion with counsel. *Id.*

The court discussed Applicant's right to a trial, the terms of the plea, and the resulting possible sentence and verified that Applicant understood his rights, the terms, and the possible sentence. The court further questioned Applicant if he was threatened, pressured, coerced, or promised anything to enter into the plea to which he responded without hesitation that he was not. *Id.* at 12-13. At two different times during the colloquy the court asked if there was a stipulation or waiver to the factual basis to which counsel replied that the defense would waive the establishment of a factual basis. *Id.* at 12 and 14. Applicant did not question counsel's statement of waiver.

To the extent that Applicant argues he did not commit the offenses to which he pled and that it was not until after the plea hearing that he learned counsel had not talked with his mother, uncle, or possible witnesses, the claims are conclusive and self-serving. Nothing in the state court record or the transcript of the plea withdrawal hearing shows that Applicant's mother, uncle, or possible witnesses provided an affidavit that they were not contacted by counsel prior to his plea hearing.

State court factual findings, including credibility findings, are presumed correct, absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *see also Marshall v. Lonberger*, 459 U.S. 422, 431-34 (1983). Based on the above findings, Applicant has not demonstrated that the factual findings of the state court are clearly and convincingly incorrect. I, therefore, defer to the state court's determination that

counsel was not coercive.  *See* 28 U.S.C. § 2254(e)(1); *Church v. Sullivan*, 942 F.2d 1501, 1516 (10th Cir. 1991) (finding that a federal court sitting in habeas review must treat a state court's finding regarding witness credibility as a finding of fact entitled to deference).

Even if counsel did lie to Applicant during discussions about the plea agreement and did not contact any individuals, as Applicant argued at his plea withdrawal hearing, other factors, as stated below, support a finding that Applicant was not prejudiced.

In *Miller v. Champion*, 262 F.3d 1066, 1074-75 (10th Cir. 2001), the Tenth Circuit determined that the strength of a prosecutor's case may be used as circumstantial evidence of what an applicant would have done had counsel not been ineffective.  As found by the state trial court, the record strongly supports the conclusion that the Applicant would have pled guilty even absent the alleged deficiencies by his counsel. The trial court found both substantial evidence against Applicant, as presented in the affidavits addressing each of the six cases at issue, and extreme exposure for a lengthy sentence that may consume the remainder of his life.  Trial Tr. July 15, 2008 Hr'g at 23. The affidavits entered on the record in the State Court Flat File for Case No. 06CR3887 include statements by the victim, friends, and the victim's father, providing substantial evidence that would support the burglary, criminal trespass, criminal mischief, menacing, stalking, and violation of a protection order.  *See* Case No. 06CR3887 (lead case), State Court Flat File at 7-10 and 14-56.  Because the strength of the prosecution's case provides strong circumstantial evidence against Applicant, the evidence dictates against a finding of prejudice.  *See Miller*, 262 F.3d at 1074-75.

24

Therefore, having reviewed the entire record, I find that Applicant can not establish a reasonable probability that, but for counsel's alleged ineffective assistance, "he would not have pleaded guilty and insisted on going to trial." *Hill*, 474 U.S. at 59.  I also find there is a reasonable argument for finding that counsel satisfied the *Strickland* deferential standard.  *See Richter*, 131 S. Ct. at 788.  The CCA decision regarding this claim did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Furthermore, based on the reasons stated above, Applicant's right to trial claim lacks merit.  Applicant knowingly and voluntarily waived his right to a trial.  Also, to the extent Applicant is raising an actual innocence claim, the claim lacks merit.  Nothing Applicant states in the Application sets forth new reliable evidence that would support an actual innocence claim.  *See Schulp v. Delo*, 513 U.S. 298, 327 (1995).

### III. Conclusion

**THEREFORE, IT IS ORDERED** as follows:

1. That the *pro se* Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [# 1], filed on January 31, 2011 is **DENIED**;

2. That this case is **DISMISSED WITH PREJUDICE**; and

3. That there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED at Denver, Colorado, September 1, 2011.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court